UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
JESSICA BERK,                          :    13 Civ. 3917 (LAK) (JCF)
                                       :
            Plaintiff,                 :        REPORT AND
                                       :        RECOMMENDATION
    - against -                        :
                                       :
CITY OF NEW YORK (NEW YORK CITY        :
POLICE DEPARTMENT), POLICE             :
LIEUTENANT "JOE SEIDEL," POLICE        :
SERGEANT "JOSEPHINA" DOHERTY,          :
POLICE OFFICER OLIVERAS, POLICE        :
OFFICER "6'2" 300LBS," POLICE          :
OFFICER MAK, POLICE OFFICER JOHN       :
DOE, POLICE OFFICER JAMES DOE, and     :
POLICE OFFICER JANE DOE,               :
                                       :
            Defendants.                :
- - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

        In this action pursuant to 42 U.S.C. § 1983, plaintiff Jessica

Berk alleges that, in three separate encounters, various officers

of the New York City Police Department violated her civil rights.

Defendants City of New York, Lieutenant John Seidel (erroneously

sued as Joe Seidel), Sergeant Linda Doherty (erroneously sued as

Josephina Doherty), Officer Wesley Mak, and Officer Jonathan

Oliveras have filed a motion for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure.  I recommend

granting the motion in part and denying it in part.

Background

        Ms. Berk lives in New York City's Sixth Precinct, where police

officers apparently know her from her neighborhood community

activism.  (Second Amended Complaint ("2nd Am. Compl."), ¶ 6).  In

her Second Amended Complaint, she outlines three objectionable

interactions with various police officers from that precinct

1

occurring between the end of 2011 and the middle of 2013.  On the morning of November 15, 2011, while walking past the precinct headquarters, Officer Oliveras "invited [Ms. Berk] inside to identify someone." (2nd Am. Compl., ¶ 7).  Once inside, she was handcuffed, searched invasively, shackled to a bench, repeatedly fingerprinted, held in a cell for twelve hours, and denied both water and the opportunity to make a phone call. (2nd Am. Compl., ¶ 7).  Lieutenant Seidel reportedly laughed at her; an unnamed police officer (identified in the complaint as "Police Officer '6'2" 300 lbs.'" and hereinafter designated "the unnamed officer") insulted her; and other inmates spat on her.[1]  (2nd Am. Compl., ¶ 7).  When she was released at approximately midnight, Officer Mak allegedly stated, "Never come in again.  Just be thankful that you are not dead." (2nd Am. Compl., ¶ 8).

In March 2012, the unnamed police officer responded to a 911 call reporting that Ms. Berk had been injured in an elevator accident. (2nd Am. Compl., ¶¶ 10-11).  He advised the Emergency Medical Services personnel who arrived that she was "faking," and

---

[1] The unnamed officer has not yet been identified, and the defendants have not moved to dismiss the claims against him. (Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(c) ("Def. Memo.") at 2 n.1).  If he is still unidentified when discovery closes, the claims against him will be dismissed without prejudice. See Shepherd v. Fischer, No. 10 CV 1524, 2015 WL 1246049, at *23 (N.D.N.Y. Feb. 23, 2015) (recommending dismissal of Doe defendants after close of discovery), report and recommendation adopted, 2015 WL 1275298 (N.D.N.Y. March 18, 2015); Delrosario v. City of New York, No. 07 Civ. 2027, 2010 WL 882990, at *5 (S.D.N.Y. March 4, 2010) ("Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice.").

thereafter followed the ambulance to Bellevue Hospital. (2nd Am. Compl., ¶¶ 11-12). When Ms. Berk disembarked from the ambulance, he pushed her wheelchair into the street, then "caused her to be handcuffed and . . . admitted as an 'emotionally disturbed person.'" (2nd Am. Compl., ¶ 12). While in the psychiatric ward, she suffered heart arrythmia, and she was transferred to the coronary care unit when her doctor arrived. (2nd Am. Compl., ¶ 13).

The final incident occurred in June 2013. (2nd Am. Compl., ¶ 15). Officer Oliveras and two employees of Adult Protective Services arrived at the apartment Ms. Berk shares with her mother stating they had a court order allowing them to interview her mother.[2] (2nd Am. Compl., ¶ 15). Officer Oliveras refused to show the order to Ms. Berk, but entered and searched the apartment. (2nd Am. Compl., ¶ 16). He then restrained Ms. Berk while the Adult Protective Services personnel interviewed her mother. (2nd Am. Compl., ¶ 16).

Discussion

A.   Legal Standard

The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as that used in evaluating a motion to dismiss under Rule 12(b)(6). L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). A court

---

[2] The plaintiff mistakenly names "Defendant Torres" rather than Officer Oliveras in one of these allegations; however, it is clear she is referring to Officer Oliveras, and the defendants do not argue otherwise.

therefore must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Id. A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where a complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8. Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally

4

construed.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Honig v. Bloomberg, No. 08 Civ. 541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), aff'd, 334 F. App'x 452 (2d Cir. 2009).

B.   Lieutenant Seidel and Officer Mak

As the defendants point out, Ms. Berk's only allegation against Lieutenant Seidel is that he laughed at her and the only allegation against Officer Mak is that he made a vaguely threatening statement to her as she was leaving the precinct house on November 15, 2011.  (Def. Memo. at 3-4).  Conduct such as "[v]erbal harassment, even if inappropriate or unprofessional, does not constitute a violation of any federally protected right and is not actionable under 42 U.S.C. § 1983." Covington v. Mountries, No. 13 Civ. 343, 2014 WL 2095159, at *7 (S.D.N.Y. May 20, 2014) (collecting cases); see also Bowles v. New York, 37 F. Supp. 2d 608, 613 (S.D.N.Y. 1999) ("[V]erbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. § 1983."). Accordingly, the Second Amended Complaint does not state a claim against either of these two defendants.

C.   Sergeant Doherty

The only factual allegation against Sergeant Doherty is that she was an officer at the Sixth Precinct during the relevant time

period.  A defendant cannot be held liable under § 1983 unless she is personally involved in the alleged deprivation of constitutional rights.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  The mere fact that an officer occupies a supervisory position is insufficient to establish involvement, as there is no respondeat superior liability under the statute.  Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).  Rather, to establish the liability of a supervisor,

> there must be evidence that a supervisory defendant (1) directly participated in the infraction, (2) had actual or constructive notice of the alleged unconstitutional practices but failed to remedy the wrong, (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, or (4) was grossly negligent in supervising subordinates who committed the wrongful acts.

Brown v. Jeanty, No. 03 Civ. 8712, 2009 WL 6065754, at *7 (S.D.N.Y. July 23, 2009) (citing Colon, 58 F.3d at 873), report and recommendation adopted, 2010 WL 1047651 (S.D.N.Y. March 22, 2010).  Ms. Berk has alleged no such connections between Sergeant Doherty and the alleged constitutional violations in her complaint.

    D.   The City of New York

    "[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee."  Id.; see also Reynolds v. Giuliani, 506 F.3d 183, 207 (2d Cir. 2007).  "A municipal policy may be pronounced or tacit and

reflected in either action or inaction," <u>Cash v. County of Erie</u>, 654 F.3d 324, 334 (2d Cir. 2011), and may be premised upon the actions of a policymaking individual, <u>see</u> <u>Walker v. City of New York</u>, 974 F.2d 293, 296-97 (2d Cir. 1992).

Here, the plaintiff fails to allege any official policy or custom that violated her constitutional rights; indeed, the complaint is devoid of allegations against the City of New York or any policymaking official.  Ms. Berk has not, therefore, adequately alleged municipal liability.[3]

   E.   <u>Officer Oliveras</u>

Officer Oliveras was involved in two alleged incidents.  On November 15, 2011, he allegedly invited Ms. Berk into the precinct house, where she was subsequently arrested and held.  In June 2013, he allegedly entered and searched her apartment and thereafter restrained her while Adult Protective Services personnel interviewed her mother.

Officer Oliveras pins his hopes for dismissal on a single argument: a series of documents attached to the defendants' answer purportedly shows that, from January 14, 2011, to February 4, 2013, he was assigned not to the Sixth Precinct, but to the 104th Precinct. (Affidavit of Nicole Papamichael dated July 27, 2015, attached as part of Exh. A to First Amended Answer, at 2; Police Department Personnel Order No. 14, attached as part of Exh. A to

---

[3] The claims against Lieutenant Seidel, Officer Mak, Sergeant Doherty, and the City of New York should be dismissed with prejudice.  Having filed three complaints in this action, Ms. Berk has had ample opportunity to state claims against these defendants.

First Amended Answer; Police Department Personnel Order No. 43, attached as part of Exh. A to First Amended Answer). The defendants argue that "[b]ecause it appears that [the] plaintiff incorrectly identified [] Officer Oliveras, he must be dismissed from this case." (Def. Memo. at 5). There are three problems with this strategy.

First, it is not appropriate to credit the contents of the affidavit and attached personnel orders in ruling on this motion for judgment on the pleadings. To be sure, many cases state that, in deciding such a motion, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). However, a motion for judgment on the pleadings is generally utilized "when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Export-Import Bank of the Republic of China v. Grenada, No. 13 Civ. 1450, 2013 WL 4414875, at *2 (S.D.N.Y. Aug. 19, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)). Where a defendant attaches to his answer evidence relevant to a controverted fact -- here, whether Officer Oliveras was involved in the November 15, 2011 incident -- accepting such evidence as accurate would breach the rule that the complaint's allegations must be taken as true. See, e.g., L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d at 429. Thus, some courts will take

8

judicial notice of official documents attached to a responsive
pleading merely for the fact of their existence, rather than for
the truth of the matters asserted in them.  <u>See, e.g.</u>, <u>Kanderskaya
v. City of New York</u>, 11 F. Supp. 3d 431, 433-34 (S.D.N.Y. 2014)
(taking notice of "police reports attached to Defendants' Answer []
for the fact that the reports existed, but not for the truth of the
facts set forth in the reports"), <u>aff'd</u>, 590 F. App'x 112 (2d Cir.
2015).  Here, the mere fact that the personnel reports exist is not
relevant, so that would not help the defendants.

Second, the affidavit and records, even if credited, do not
prove that Officer Oliveras was not outside the Sixth Precinct
headquarters on November 15, 2011.  There is no evidence, for
example, that he was on duty in the 104th Precinct at the relevant
time and therefore could not have engaged in the conduct Ms. Berk
alleges outside the Sixth Precinct.  That is, the fact that he was
assigned to a different precinct tells us nothing about his
whereabouts or activities on the morning in question.

The third problem should be obvious: the final incident
outlined in the operative complaint took place in June 2013 -- that
is, at a time when the defendants' records indicate Officer
Oliveras was assigned to the Sixth Precinct.

The defendants do not contend that Ms. Berk has failed to
allege constitutional violations against Officer Oliveras.  As to
the November 15, 2011 incident, Ms. Berk states a claim under
section 1983, which imposes liability on any person acting under
color of law for subjecting another "to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. "Claims for false arrest . . . , brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). To prevail on a claim of false arrest under New York law, "a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Jocks, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975)).

Taking the allegations in the operative complaint as true and drawing all reasonable inferences in the plaintiff's favor, Ms. Berk has alleged that Officer Oliveras, while acting in his official capacity as a police officer, confined her or caused her to be confined at the headquarters of the Sixth Precinct. There is no indication in the complaint that there was probable cause for this arrest -- allegedly, Ms. Berk was merely walking past the station -- and it was therefore not privileged. See Jocks, 316 F.3d at 135 ("If probable cause existed, [the defendant] as a police officer would be privileged to make an arrest.").

As to the June 2013 incident, Ms. Berk alleges that Officer Oliveras, purportedly in possession of a court order allowing him

10

or the Adult Protective Services personnel accompanying him to
interview her mother, entered her apartment, searched it, and
thereafter restrained her.  According to the complaint, then, the
search was performed without a valid search warrant.  "It is []
established fourth amendment law that an individual has a right to
be free from unreasonable searches . . . and that 'a search
conducted without a warrant issued upon probable cause is "per se
unreasonable . . . subject only to a few specifically established
and well-delineated exceptions,"'" such as consent.  United States
v. Kon Yu-Leung, 910 F.2d 33, 40-41 (2d Cir. 1990) (third
alteration in original) (quoting Schneckloth v. Bustamonte, 412
U.S. 218, 219 (1973)).  The complaint is similarly clear that Ms.
Berk did not consent to the search.  Moreover, the allegation that
Officer Oliveras restrained her while the Adult Protective Services
officials interviewed her mother appears to state a claim for false
arrest, as there is no indication that the restraint was
privileged.  See, e.g., Posr v. Doherty, 944 F.2d 91, 97 (2d Cir.
1991) (explaining that formal arrest is not necessary element of
false arrest claim; even brief restraint of person's right to walk
away effects seizure).

Conclusion

     For the foregoing reasons, I recommend that the defendants'
motion for judgment on the pleadings (Docket No. 32) be granted in
part and denied in part.  Specifically, I recommend granting the
motion as to Lieutenant Seidel, Officer Mak, Sergeant Doherty, and
the City of New York and dismissing the claims against those

11

defendants with prejudice, and denying the motion as to the claims against Officer Oliveras.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       October 2, 2015

Copies mailed this date:

Jessica Berk
95 Christopher St., #15H
New York, NY 10014

David Cooper, Esq.
Assistant Corporation Counsel
100 Church St.
New York, NY 10007

12